## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RIVER LIGHT V, L.P.,

               Plaintiff,

    v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

               Defendants.

Case No. 24-cv-08553

## COMPLAINT

Plaintiff River Light V, L.P. ("Plaintiff" or "Tory Burch") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Tory Burch's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tory Burch substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Tory Burch to combat e-commerce store operators who trade upon Tory Burch's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including footwear, handbags, accessories, clothing, and other products, using infringing and counterfeit versions of Tory Burch's TORY BURCH, REVA, "TT" and other trademarks (the "Counterfeit Tory Burch Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Tory Burch Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Tory Burch is forced to file this action to combat Defendants' counterfeiting of Tory Burch's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Tory Burch Products over the Internet. Tory Burch has been and continues to be irreparably damaged

through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.      Plaintiff is the owner of the intellectual property related to the Tory Burch lifestyle brand, including the distinctive and famous TORY BURCH and ⊕ ("TT Logo") trademarks. For nearly two decades, TORY BURCH and the TT Logo have been used in connection with the design, manufacture, marketing and sale of Tory Burch's global fashion line.

5.      Founded in 2004 in New York City, Tory Burch is an American luxury brand known for beautiful, timeless pieces and rich storytelling that evokes optimism and joy. Tory is a fashion designer who draws inspiration from her parents' effortless style, the worlds of travel, art and interiors, and women globally. The collections include ready-to-wear, handbags, footwear, accessories, jewelry, home and beauty (collectively, the "Tory Burch Products"). Empowering women is the company's guiding principle, underpinning the design philosophy and company culture, and driving the work of the Tory Burch Foundation.

6.      Tory Burch launched out of a small boutique in New York City. Almost immediately, the business experienced a meteoric rise in recognition and popularity, which led to its growth into a billion-dollar fashion company. Today, there are more than 350 boutiques across Norh America, Europe, the Middle East, Latin America, Asia and Australia, with over 100 Tory Burch stores in the United States. The collection is also available at over 700 department and specialty stores worldwide, with a presence in over 80 countries across six continents, as well as on Tory Burch's eight e-commerce websites.  In Illinois, Tory Burch Products are offered for sale at various stores, including Saks Fifth Avenue, Nordstrom,

Bloomingdale's, and an eponymous boutique located in Chicago's famous Magnificent Mile shopping district. Since launch, Tory Burch has invested hundreds of millions of dollars in marketing and advertising its goods, marks and designs globally.

7.      The Tory Burch brand has a strong media presence and is frequently covered by fashion blogs, magazines, newspapers, and talk shows. One of the earliest defining moments for Tory Burch was in 2005 when Oprah Winfrey endorsed the brand on her talk show; immediately after Oprah's endorsement, the Tory Burch website received over eight million hits. Since then, profiles about Ms. Burch and the Tory Burch company have been featured in many prominent publications, such as Vanity Fair, Vogue, Fortune, InStyle, the New York Times and Time (which also named Tory Burch as one of its 100 Most Influential Companies of 2024). Such publications are extensively circulated in the United States and internationally. And the TT Logo itself is frequently the subject of unsolicited media coverage and has been repeatedly recognized for its popularity and iconic status.

8.      As a result of Tory Burch's extensive use and promotion of the TORY BURCH and TT Logo marks, these trademarks have acquired considerable value and are among Tory Burch's most valuable assets. Indeed, the TORY BURCH and TT Logo marks have become famous worldwide as symbols of Tory Burch's quality, reputation, and goodwill, and serve as instant source-identifiers for Tory Burch's products and services.

9.      The brand has a strong digital media presence, with nearly 300,000 followers on TikTok and over 2,500,000 followers on Facebook, while Ms. Burch has over 3,500,000 followers on Instagram. Social media platforms reflect the public's interest in the brand and its offerings, with fans posting photos of recent purchases and commenting on current and future collections.

10.     Tory Burch Products are particularly popular among the fashion conscious and celebrity trendsetters. Celebrities seen wearing Tory Burch Products include Hailey Bieber, Gigi Hadid, Katie Holmes, Mindy Kaling, Blake Lively, Jennifer Lopez, Kate Middleton, Kerry Washington, Oprah Winfrey, and Reese Witherspoon. When former U.S. First Lady Michelle Obama wore a tie-dye TORY BURCH dress to an event, the dress quickly sold out on the Tory Burch website and other online retailers. On another occasion, Kate Middleton was photographed wearing a graphic print TORY BURCH dress in New Zealand, and the dress sold out almost immediately on Tory Burch's website, as well as every other online retailer.

11.     Both Tory Burch and Ms. Burch, in her capacity as a designer, have received peer recognition for their contributions to the fashion industry. Among other accolades, Ms. Burch was awarded the Accessories Designer of the Year honor from the Council of Fashion Designers of America in 2008, listed in Vanity Fair's New Establishment List in 2013, named Glamour Woman of the Year in 2019 and named Harper's Bazaar's Designer of the Year in 2023. In addition, she has consistently been cited as one of Forbes' Most Powerful Women in the World.

12.     In addition to common law trademark rights, Tory Burch owns numerous trademark registrations for its distinctive trademarks worldwide, including with the United States Patent and Trademark Office (collectively, the "TORY BURCH Trademarks"). A non-exclusive list of the TORY BURCH Trademarks is included below.

| Registration No. | Trademark |
|---|---|
| 3,386,532<br>3,428,373<br>3,428,374<br>3,428,816<br>3,758,631<br>3,814,500<br>4,205,354<br>4,656,700 | TORY BURCH |

| Registration No. | Trademark |
|---|---|
| 4,045,568<br>4,129,090<br>4,150,523<br>4,213,404<br>4,213,405<br>4,664,182<br>3,029,795<br>3,563,326<br>4,029,068 | |
| 4,317,165<br>4,345,875<br>4,363,739<br>4,382,707 | |
| 4,242,007<br>4,365,683<br>4,459,720 | |
| 3,920,528 | |
| 4,345,879<br>4,345,878<br>4,345,877<br>4,345,880 | |
| 5,368,436<br>4,422,079<br>5,015,665 | TORY |
| 3,479,178<br>3,918,505 | REVA |

13. True and correct copies of the United States Registration Certificates for the above-listed TORY BURCH Trademarks are attached hereto as **Exhibit 1**. The registrations for the TORY BURCH Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the TORY BURCH Trademarks constitute *prima facie* evidence of their validity and of Tory Burch's exclusive right to use the TORY BURCH Trademarks pursuant to 15 U.S.C. § 1057(b). The TORY BURCH Trademarks have been used exclusively and continuously by Tory Burch and its authorized licensees, some since at least as early as 2004.

14. The TORY BURCH Trademarks are owned exclusively by Tory Burch and are displayed extensively on Tory Burch Products and in Tory Burch marketing and promotional materials. Since launch, Tory Burch has invested hundreds of millions of dollars in marketing and advertising its goods, marks and designs globally. Tory Burch maintains strict quality standards, and Tory Burch Products are inspected and approved by Tory Burch or an agent of Tory Burch prior to distribution and sale. These efforts have resulted in substantial sales of Tory Burch Products, as well as invaluable consumer goodwill.

15. Tory Burch's innovative marketing and product design have enabled Tory Burch to achieve widespread recognition and fame, and have made the TORY BURCH Trademarks some of the most well-known marks in the fashion industry. Since at least 2004, Tory Burch has operated a website at toryburch.com, which has received tens of millions of visitors. Sales of Tory Burch Products at toryburch.com represent a significant portion of Tory Burch's business. The toryburch.com website features proprietary content, images and designs exclusive to Tory Burch.

**The Defendants**

16.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Tory Burch.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Tory Burch to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Tory Burch will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of the Tory Burch brand has resulted in significant counterfeiting of the TORY BURCH Trademarks.  In recent years, Tory Burch has identified many fully interactive, e-commerce stores offering Counterfeit Tory Burch Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, DHgate, Temu, and TikTok, including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States.  According to U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an

increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong. *Id*.

19.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

20.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer

9

shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Tory Burch Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Tory Burch Products by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the TORY BURCH Trademarks, and none of the Defendants are authorized retailers of genuine Tory Burch Products.

22. Many Defendants also deceive unknowing consumers by using the TORY BURCH Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Tory Burch Products. Other e-commerce stores operating under the Seller Aliases omit using TORY BURCH Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Tory Burch Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete

information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Tory Burch Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Counterfeit Tory Burch Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Tory Burch Products were manufactured by and come from a common source and that Defendants are interrelated.

26.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Tory Burch's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Tory Burch. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Tory Burch Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the TORY BURCH Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Tory Burch Products into the United States and Illinois over the Internet.

29.     Defendants' unauthorized use of the TORY BURCH Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Tory Burch Products, including the sale of Counterfeit Tory Burch Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Tory Burch.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

12

31.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered TORY BURCH Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Tory Burch Products.  The TORY BURCH Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Tory Burch Products offered, sold or marketed under the TORY BURCH Trademarks.

32.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the TORY BURCH Trademarks without Tory Burch's permission.

33.     Tory Burch is the exclusive owner of the TORY BURCH Trademarks.  Tory Burch's United States Registrations for the TORY BURCH Trademarks (**Exhibit 1**) are in full force and effect.  Upon information and belief, Defendants have knowledge of Tory Burch's rights in the TORY BURCH Trademarks and are willfully infringing and intentionally using counterfeits of the TORY BURCH Trademarks.  Defendants' willful, intentional and unauthorized use of the TORY BURCH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Tory Burch Products among the general public.

34.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35.     Tory Burch has no adequate remedy at law, and if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the goodwill in the well-known TORY BURCH Trademarks.

36.     The injuries and damages sustained by Tory Burch have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Tory Burch Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     Defendants' promotion, marketing, offering for sale and sale of Counterfeit Tory Burch Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association between Tory Burch and Defendants, or the origin, sponsorship, or approval of Defendants' Counterfeit Tory Burch Products by Tory Burch.

39.     By using the TORY BURCH Trademarks in connection with the sale of Counterfeit Tory Burch Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Tory Burch Products.

40.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Tory Burch Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41.     Tory Burch has no adequate remedy at law and, if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the associated goodwill of its Tory Burch brand.

**PRAYER FOR RELIEF**

WHEREFORE, Tory Burch prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the TORY BURCH Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Tory Burch Product or is not authorized by Tory Burch to be sold in connection with the TORY BURCH Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a Tory Burch Product or any other product produced by Tory Burch, that is not a Tory Burch Product, or not produced under the authorization, control, or supervision of Tory Burch and approved by Tory Burch for sale under the TORY BURCH Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Tory Burch Products are those sold under the authorization, control or supervision of Tory Burch, or are sponsored by, approved by, or otherwise connected with Tory Burch;

   d. further infringing the TORY BURCH Trademarks and damaging Tory Burch's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Tory Burch, nor authorized by Tory

15

Burch to be sold or offered for sale, and which bear any of Tory Burch's trademarks, including the TORY BURCH Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Tory Burch's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, DHgate, Temu, and TikTok (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the TORY BURCH Trademarks;

3) That Defendants account for and pay to Tory Burch all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the TORY BURCH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Tory Burch be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TORY BURCH Trademarks;

5) That Tory Burch be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 17th day of September 2024.       Respectfully submitted,

                                             /s/ Justin R. Gaudio
                                             Amy C. Ziegler
                                             Justin R. Gaudio
                                             Andrew D. Burnham
                                             Luana Faria de Souza
                                             Greer, Burns & Crain, Ltd.
                                             200 West Madison Street, Suite 2100
                                             Chicago, Illinois 60606
                                             312.360.0080 / 312.360.9315 (facsimile)
                                             aziegler@gbc.law
                                             jgaudio@gbc.law
                                             aburnham@gbc.law
                                             lfaria@gbc.law

                                             *Counsel for Plaintiff River Light V, L.P.*